**L. F. WATSON et al., Appellants,**

v.

**INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, WARE-
HOUSEMEN AND HELPERS OF
AMERICA et al., Appellees.**

No. 24125.

United States Court of Appeals
Fifth Circuit.

Aug. 30, 1968.

George M. Eubanks, Atlanta, Ga., Paul, Eubanks & Scroggins, Atlanta, Ga., of counsel, for appellants.

John W. Chambers, Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., for appellee, Terminal Transport Co., Inc.

Herbert S. Thatcher, Thatcher & Barr, Washington, D. C., for appellee, International Brotherhood of Teamsters.

Thomas L. Carter, Jr., Gilbert & Carter, Atlanta, Ga., for appellee, Local Union No. 728.

Before TUTTLE, BELL and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The six plaintiffs-appellants brought suit under Section 301 of the National Labor Relations Act,[1] against the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union), Local 728 thereof, and the Employer, Terminal Transport Company, Inc., appellees herein. The district court after full hearing denied relief. We affirm.

The appellants' claims for relief are based upon the 1961–1964 collective bargaining agreement between Terminal and Local 728. The substance of appellants' claims is that they were employed as "casual" employees, and were denied the status of "regular" employees, and the attendant benefits, such as seniority rights, pensions, vacation and holiday pay, health and welfare coverage, and the like.

All of the appellants were employed by Terminal between February 1961 and February 1963. On July 15, 1963, each of the appellants filed a grievance asserting that he should be classified as a regular employee under the 1961–1964 collective bargaining agreement. On July 20, 1963, Terminal wrote each of the appellants notifying them that Terminal considered the filing of grievances seeking status as regular employees as a relinquishment of their casual employment status. Terminal heard nothing from any of the appellants. None of the appellants requested that they be allowed to continue work as casuals. It is the contention of Terminal, Local 728 and the Teamsters that the appellants should have continued work as casuals during the grievance procedure, and that by not doing so, they voluntarily relinquished their employment. The appellants contend they were fired.

Three principal questions are presented on this appeal: (1) whether there was a valid casual agreement between Local 728 and Terminal governing the terms and conditions of appellants' employment as casuals as opposed to status as regular employees; (2) if such an agreement does exist, were appellants employed as casual employees, and (3) whether Local 728 and the Teamsters, either or both, failed, in bad faith, to represent the appellants fairly and adequately in the processing of their griev-

---

1. 29 U.S.C. Section 185.

ances against Terminal for the alleged discharge and denial of regular employee status.

## I.

For purposes of background, evidence was introduced at the trial showing that the term "casual" is applied throughout the trucking industry to employees who are used to fill in for regular employees who are absent, or as warranted by a carrier's particular operating circumstances. "Casual" employees do not obtain seniority rights or receive certain fringe benefits such as paid vacations, holidays or health and welfare benefits.

It was explained at the trial that carriers are benefitted by the use of casuals in that employees are available to satisfy requirements caused by absenteeism of regular employees. By resorting to the list of casuals, the carrier can avoid overloading the seniority list with regular employees, who would be subjected to periodic layoffs. Use of casual employees also serves as a training ground for new, young men in the industry. The practice of hiring casual employees also benefits the regular drivers by affording them longer breaks between runs.

The casual employees themselves benefit in several ways. The record reveals that regular drivers are not hired in the industry over the age of thirty-seven, but this same restriction does not apply to casuals. Four of the appellants were over this age limit of thirty-seven; thus, as to these four, they would not have been employable in the trucking industry but for the very casual status attacked in the present action.

Employment as a casual is often available to employees who are laid off or on strike from their regular employment. In fact, four of the six appellants were either on strike or laid off elsewhere before being hired by Terminal.

The provisions of the various collective bargaining agreements are relevant to our consideration. In January 1955, transportation employers and unions in the Southeastern United States negotiated a joint, multi-employer, multi-union collective bargaining agreement to be in effect from 1955 through 1961. The contract also provided for a limited reopening of negotiations on wages and fringe benefits, which was done in 1958. Among other things, the 1958–1961 contract provided, in Article I, Section 6, that "(r)iders of Supplements to the agreement providing for better wages, hours and working conditions which have previously been negotiated or may be negotiated by local unions and employers affected, and put into effect, shall be continued". In 1959, the oral interpretations of the 1958–1961 contract were reduced to writing, and the modifications relevant here provide as follows:

"Article 2—*Probationary*. An employer may waive the 30-day probationary period if he so advises the employee and the union in writing at the time of original hire that the man is being hired as a regular employee.

"In order to obtain the necessary personnel for pulling runs during the vacations, the employer may employ a person with the understanding that he will not become a regular employee, provided, both the man and the union are so notified in writing at the time of such special employment. By mutual agreement, between the union and the employer, this same principle of special employment may be made applicable to other special occasions."

Subsequent to the adoption of this interpretation, Terminal and Local 728, under the "special occasions" clause, orally agreed that Terminal's regular employees would take a longer break between runs than the ten hours allowed by the collective bargaining contract. Terminal's employees were allowed to mark off between runs for periods of time up to forty-eight hours. Local 728 agreed as quid pro quo to allow Terminal to employ an indefinite number of employees as casuals.

The 1961–1964 bargaining contract under which the present suit was brought, contains the following provision on which the appellants rely:

"Article II: Section 2: A new employee shall work under the provisions of this agreement, but shall be employed only on a thirty (30) day trial basis, during which period he may be discharged without further recourse. *After 30 days, the employee shall be placed on the regular seniority list.*" (Emphasis added)

It is undisputed that the appellants in the present action were employed by Terminal for the requisite thirty-day period, but were not placed on the seniority list and accorded the other benefits of regular status drivers. The appellants argue that this constitutes a violation of Article II, Section 2, above, but the appellees rely on the preceding interpretation of the Interpretations Committee to support their contention and the holding of the district court that the appellants were not entitled to seniority benefits.

The substance of the appellants' position is that the previously quoted interpretation, as applied to Article II, Section 2 of the 1961–1964 collective bargaining contract, was, in reality, not an interpretation at all, but rather, it constitutes an impermissible amendment to the collective bargaining contract. The appellants rely on a provision of the 1961–1964 contract providing that *"no new riders or supplements* to this agreement shall be negotiated by any of the parties hereto". (Emphasis added). The appellants then argue that the casual agreement between Terminal and Local 728 was not reduced to writing until December 1961, after the 1961–1964 collective bargaining contract was in effect, thus creating an unauthorized "new rider or supplement" to the contract.

■ We reject this argument for several reasons. First, the evidence was overwhelming that the casual agreement between Terminal and Local 728 was in effect long before the 1961–1964 contract was negotiated, and, therefore,

could not be considered a "new" rider or supplement. Second, even though the casual agreement was reduced to writing only after the 1961–1964 contract was in effect, it did no more than reiterate the oral understanding and prior interpretations concerning the casual agreement, and could in no sense of the word be considered "new".

Several portions of the 1961–1964 agreement support our interpretation of the contract. Section 7 of Article I provides:

"Riders or supplements to this agreement providing for better wages, hours and working conditions *which have previously been negotiated by Local Unions and employers affected and put into effect, shall be continued * * *"* (Emphasis added)

Our interpretation of this provision is in accord with that of appellees—that this provision in the 1961–1964 contract expressly ratified and incorporated into the 1961–1964 contract Terminal's previous casual agreement with Local 728.

■ An additional provision is relevant. Article VI, Section 1, provides:

"The employer agrees that all conditions of employment relating to wages, hours of work, overtime differentials and general working conditions shall be maintained at not less than the highest standards in effect at the time of the signing of this agreement * * *"

The casual agreement at issue in this case easily falls within the classification of "conditions of employment" referred to in the preceding provisions, and was given continuing effect by Article VI, Section 1.

Appellants argue that to sustain the interpretation of the collective bargaining contract adopted in the present case is to sanction the undermining of the integrity of joint multi-employer, multi-union collective bargaining agreements by side agreements of individual parties to the joint agreement. With this argument, appellants run afoul of existing collective bargaining policy. The inter-

pretative procedure is necessitated by the very nature of collective bargaining agreements that involve the triangle of often diverging interests of employers, unions, and employees covering a wide range of conduct and an enormous variety of problems. The necessary task of filling in the details is inherent. A collective bargaining contract operates prospectively over a substantial period of time and the parties cannot be expected to foresee all the problems that will develop in an industrial establishment within the period of the contract and more scope must be left for decisions made in the course of performing the agreement. The parties to the collective bargaining agreement share a degree of mutual interdependence for the cost of disagreement is great and the pressure to reach agreement is so intense that the parties are willing to contract with the thought in mind of working out the problems of interpreting and amending when the inevitable problems arise.[2] As one commentator has perceptively stated: "Many provisions do little but establish the framework for further bargaining. Others have a generality which obviously looks to joint labor-management participation. Deliberate ambiguities, inadvertent omissions and unforeseen contingencies require continuous rule-making which, passing in the guise of interpretation, parallels the law making of courts and administrative agencies."[3]

■ The case law is clear that an oral agreement between the parties to a collective bargaining contract may modify, supplement or amend the collective bargaining contract. Roadway Express, Inc. v. General Teamsters Local Union 249, 3 Cir., 1964, 330 F.2d 859; N. L. R. B. v. Local Union 825, Operating Engineers, 3 Cir., 1963, 315 F.2d 695; Rabouin v. N. L. R. B., 2 Cir., 1952, 195 F. 2d 906.

■ In support of their position, appellants cite numerous cases which we find inapposite in that they disapprove of side agreements which undermine not only the standards of wages, hours and working conditions but also the status of the national and local unions as bargaining agents. Such an objective is simply not contemplated by the casual agreement in the present case. To the contrary, the district court properly found ample testimony and evidence that agreements concerning the casual drivers were a long existing custom and worked to the benefit of all parties concerned.[4] Local supplements are an inherent part of the concept of national or area collective bargaining, for neither the employers nor local union would engage in the practice of group bargaining if it were so rigid as to preclude adjustments for local needs of employers and employees.

■ Appellants maintain that the casual agreement between Local 728 and Terminal constituted a waiver of seniority, contrary to the holding in J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944). Case is distinguishable. In Case, the Court condemned individual contracts between employer and individual employees that circumvented the union and the collective bargaining agreement. In the instant case, the casual agreement between Terminal and the Local was entered into at the insistence of the Local and the agreement was worked out between Terminal and the Local in accordance with the authority conferred by the collective bargaining agreement.

## II.

■ The second major question for resolution is whether the appellants were in fact employed as casuals rather than regular truck drivers. This question is answered in the affirmative.

2. Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1490, 1492 (1959); Shulman, Reason, Contracts and Law in Labor Relations, 68 Harv.L.Rev. 1002–1005 (1955).

3. Cox, Rights Under a Labor Agreement, 69 Harv.L.Rev. 606 (1956).

4. See pages 3 and 4, supra.

Appellants testified to their unaware-ness that they were hired as casuals, but the court below relied on substantial evidence and testimony that made it highly unlikely that the employees were unaware of their casual status. Each of the employees, except Watson, signed papers at the initiation of employment acknowledging that they were to be used as casual employees only. Although Watson's signed form was not produced, there was testimony that he did sign the form, and his trip reports show that he uniformly checked himself off as a casual rather than a regular driver.

Other testimony showed that a list of regular drivers was posted and the appellants would have been well aware that they were not on it. The district court also noted that appellants did not demand seniority status after thirty days employment, as provided in Article II, Section 2, of the contract, although they had worked from six to twenty months with Terminal at the time the first grievance was filed. It appears probable that the first thought the appellants had concerning acquiring status as regulars came when they realized that they were not going to get their jobs back with former employers from whom they had separated because of strikes and lay-offs.

■ The circumstances surrounding the termination of the appellants' employment with Terminal can be briefly summarized. When the appellants filed their grievances seeking regular status, Terminal notified them that its interpretation of this action was that the appellants intended to relinquish their casual status. Upon receiving Terminal's interpretation of their action, the appellants did nothing, but departed. No request was made to continue work as casuals. The record supports the inference that appellants voluntarily relinquished their employment, and were not wrongfully discharged. In fact, the attorney representing all the appellants advised at least one of the appellants to refuse to continue work, rather than remain on the job as a casual pending the operation of the grievance procedure, as is the usual practice. We hold that there was no wrongful discharge, or, for that matter, any discharge at all.

### III.

The final issue is easily disposed of. The appellants contend that Local 728, with the concurrence and knowledge of the Teamsters, did, in bad faith, fail to adequately represent them in the prosecution of their grievances through the grievance procedure.

■ We find nothing in the present record to support the contention that the Local or the Teamsters exercised bad faith. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). If the representation of the appellants was anything less than enthusiastic, it may well have been due to the Local's well-founded belief that the grievance was unjustifiable. The union is permitted to exercise its discretion in prosecuting grievances. Vaca v. Sipes, supra. Indeed, it is questionable that the union could expect to prosecute successfully a grievance attacking the casual agreement entered into with Terminal, which agreement the Local had procured and negotiated.

The district court is in all things

Affirmed.