**Ray MELENDY, Plaintiff-Appellant,**

v.

**UNITED STATES POSTAL SERVICE and National Association of Letter Carriers, AFL–CIO, Defendants-Appellees.**

No. 77–1381.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1977.

Decided Jan. 10, 1978.*

Opinion Dec. 22, 1978.

* This appeal was originally decided by unreported order on January 10, 1978. *See* Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion.

Gerald A. Goldman, Chicago, Ill., for plaintiff-appellant.

James R. Barnett, Nat'l Assn. Letter Carriers, Washington, D.C., John L. Gubbins, Asst. U. S. Atty., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, SPRECHER and WOOD, Circuit Judges.

PER CURIAM.

Ray Melendy appeals from an order and judgment of the district court which granted the motions for summary judgment of the United States Postal Service (USPS) and the National Association of Letter Carriers, AFL–CIO (NALC). This action was commenced by Melendy, a letter carrier for the Postal Service and a union member, against NALC and USPS pursuant to 39 U.S.C. § 1208(b). He sought money damages from both parties. He claimed that USPS had breached the collective bargaining agreement when it disciplined him. He also claimed that NALC had not provided fair representation of his challenges to the discipline in the grievance procedure.

Both NALC and USPS moved for summary judgment. The district court, in an unpublished memorandum decision dated December 13, 1976, granted the motion of the NALC on the fair representation claim, but denied the motion of USPS. On January 13, 1977, the district court, *sua sponte*, vacated its order denying summary judgment to USPS, and directed the submission of briefs on whether an employer could be found liable for breach of the collective bargaining agreement if the union had grieved the disciplinary action and had not breached its duty of fair representation during the grievance process. Thereafter, based upon *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), and *Barbarino v. Anchor Motor Freight, Inc.*, 421 F.Supp. 1003 (W.D.N.Y. 1976), the district court also granted summary judgment to USPS.

Melendy contends on this appeal that the district court erred when it granted the NALC's motion for summary judgment because there existed genuine issues of material fact, precluding summary judgment as a matter of law. Melendy further contends that the district court erred when it granted USPS's motion for summary judgment because the district court held that a suit for breach of a collective bargaining agreement could not be maintained if the union provided fair representation in grieving the breach.

The facts involved in this case are as follows: Melendy was suspended from work three times by management between June 1974 and January 1975. He claims these disciplinary suspensions were imposed to force him to resign and were the result of a personality conflict between himself and supervisory staff at the post office to which he was assigned.

The first suspension, for 15 days, resulted from a complaint that Melendy had used foul and abusive language toward a postal customer while discussing attacks by the customer's dog. This suspension was grieved through the procedure established by the collective bargaining agreement.

While the first grievance was still in its early stages, Melendy received a second suspension for 21 days. This suspension resulted from a complaint by the same customer

that Melendy was not delivering the mail, and a complaint from a different customer that Melendy was rude. Melendy denied the charges and asserted that the first customer had a continuing vendetta against him.

This suspension was also grieved. At the step 2B grievance meeting of the union and management, the grievance was settled. The suspension was reduced to 10 days. At approximately the same time, the first grievance was denied at the step 2B stage.

After the second grievance had been settled, but before the first grievance had been arbitrated, Melendy received a third suspension for 29 days. This suspension resulted from another complaint from the customer with the dog and another customer both asserting that Melendy had failed to attempt delivery of postage due mail. Melendy admitted not attempting delivery of the postage due mail to the house with the dog, but asserted that the dog prevented the attempt. Melendy denied not attempting delivery of the postage due mail to the neighbor's house.

At the step 2B grievance meeting, this grievance was also settled, the suspension being reduced to 15 days. This settlement was reached after the arbitrator had resolved the first grievance proceeding in Melendy's favor.[1]

### A.

We will first consider the propriety of granting summary judgment to the union, since to reverse as to the NALC would require reconsideration of the granting of summary judgment as to USPS under *Hines v. Anchor Motor Freight, Inc., supra.*

Melendy contends that the union breached its duty of fair representation by acting arbitrarily and in bad faith. He asserts there were four areas in which genuine issues of material fact were unresolved concerning the suspensions. They were: 1) the hostility towards Melendy of the union representative; 2) the union's bad faith, dishonest treatment of the grievances; 3) the refusal to press the second and third grievances to arbitration; and 4) the lack of preparation by the union representative in presenting the grievances.

Our resolution of whether summary judgment was properly granted to the NALC is controlled by Fed.R.Civ.P. 56(e),[2] and our decision in *Cannon v. Consolidated Freightways Corp.,* 524 F.2d 290 (7th Cir. 1975), where we set forth the standard to determine if a union's conduct toward its member was arbitrary or discriminatory:

> [T]he plaintiff must show that the Union's conduct was intentional, invidious, and directed at that particular employee.

We must also be mindful of the policy preferring resolution of labor disputes through the grievance process. This is particularly true where, as here, the grievance procedure was an obviously bargained for provision in the collective bargaining agreement.

In the agreement, both the union and the employer agreed that disciplinary matters would be processed through a grievance procedure. The collective bargaining agreement in this particular case places control of the grievance in the union once it leaves the local work level, not in the employee. It is the union that continues the

---

1. The arbitrator found Melendy had been improperly suspended the first time and ordered that Melendy be returned to as good a status as he would have occupied had the suspension not occurred. Melendy's pleadings do not assert a claim as to the first grievance. Melendy, however, repeatedly relies upon the favorable arbitration award as proof that the union did not provide fair representation and that the employer was not warranted in imposing discipline. Other than the fact that the arbitration award occurred, the first suspension is not relevant.

2. Rule 56(e) provides in pertinent part:

   When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

grievance, but only when in its judgment further processing is in the common good. The union in the agreement here in question was properly in control of the handling of Melendy's grievances at the step 2B grievance meetings.

We turn therefore to Melendy's assertions that there are genuine issues of material fact in this record that precluded the district court from finding fair representation by the union.

The affidavit of Henry Zych, the union representative at the step 2B grievance meetings, set forth at length the proceedings at the step 2B meetings on Melendy's grievances, including when possible a recollection of the arguments advanced on behalf of Melendy. As to both the second and third grievances, Zych stated that the settlements in both were based solely upon his assessment of the merits of the grievance, including review of the statements of the complaining postal customers and his conversations with Melendy concerning the grievances. Melendy did not offer any proof that contradicted Zych's affidavit that the settlements were based solely upon Zych's assessments of the merits of the grievances.

Melendy offered no proof from which a valid inference might arise that Zych was "personally hostile" toward him.[3] Melendy offered no proof that Zych refused to cooperate with him on the second or third grievances.[4] Indeed, Melendy does not dispute Zych's statement that he had conversations with Melendy concerning the merits of the grievances. Melendy's attempt to undercut the force of Zych's affidavit by asserting that Zych was not adequately prepared for the grievance meetings and that Zych's handling of the grievances was perfunctory is unsupported in the record.

Melendy's assertion that failure by the union to take his latter grievances to arbitration is proof of the union's arbitrariness, bad faith and dishonest treatment is equally unfounded, but for a different reason. The union need not arbitrate every grievance. *Vaca v. Sipes,* 386 U.S. 171, 191–192, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The union has a duty to screen grievances and arbitrate only those the union believes are meritorious. Cf. *Moore v. Sunbeam Corp.,* 459 F.2d 811, 819 (7th Cir. 1972).

The record does show that Zych had a policy of not settling disciplinary grievances when the employee or the union or both demanded full exoneration of the employee. However, Melendy offered no proof that Zych knew that either Melendy or the local union demanded full exoneration. Any such demand was stated in letters to people other than Zych, dated after the settlements in question.

Lastly, but most tellingly, Melendy acknowledges that "[b]y themselves the settlements were not arbitrary, and may have plausibly been founded upon the merits of the grievances."[5] This acknowledgment 1) supports Zych's affidavit that he settled the grievances in good faith on their merits, and 2) establishes that "just cause" was arguably present for assessing discipline.

The lowest common denominator in Melendy's claims is that he believes he could

---

3. Melendy attempted to create an inference that Zych showed "personal hostility (or lack of respect) toward Melendy," by Zych's statements in his deposition that he recalled Melendy used an unflattering term in referring to a judge whom Melendy felt he should sue, that Zych thought Melendy had "a little vindictive attitude," that Zych stated "I can tell you a number of vendettas he (Melendy) told me about," and that Zych testified to being told by the local union president that Melendy was "a real hothead." These statements simply fail to put into controversy Zych's uncontradicted statement that the settlements were based solely on his assessments of the merits.

4. Melendy offered proof that Zych was less than cooperative in arbitrating the first grievance. The arbitration was resolved favorably to Melendy, and thus no claim is maintainable on that charge. Moreover, Melendy never offered proof that would indicate that Zych's unenthusiastic treatment of the first grievance "spilled over" into Zych's handling of the second and third grievances.

5. This candid acknowledgment obviates any need for this court to hold that the settlements were not arbitrary and were based upon the merits of the grievances.

have done better in arbitration and that the union cannot deprive him of his "roll-of-the-dice" because that would be a denial of fair representation. As was noted before, the union had no obligation to arbitrate grievances that it believed were non-meritorious. *Vaca v. Sipes, supra.* Settlement was a reasonable alternative, particularly in light of the fact that the union did achieve a reduction of the suspensions. Summary judgment was therefore properly granted on the motion of the NALC.

### B.

■ Having affirmed the grant of summary judgment to the NALC, we must consider whether Melendy has a claim for breach of the collective bargaining agreement against the employer, USPS, arising from the disciplinary suspensions.

In *Vaca v. Sipes,* 386 U.S. at 186, 87 S.Ct. at 914, the Supreme Court held that an action against the employer for breach of the collective bargaining agreement can be brought "provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance."[6] See also *Hines v. Anchor Motor Freight, supra.* In *Cannon v. Consolidated Freightways Corp.,* 524 F.2d at 294–295, and in *Moore v. Sunbeam Corp.,* 459 F.2d at 818–819, this court adopted the above quoted holding from *Vaca v. Sipes. Vaca, Hines, Cannon* and *Moore* control this case.[7]

Summary judgment was therefore properly granted to USPS. Accordingly, the judgment of the district court is

Affirmed.

6. Melendy contends this holding of the Supreme Court of the United States was only dicta and that those courts that have relied upon this holding have "misread" and "misapplied" that passage. The holding above quoted, however, was not dicta. The holding was a necessary predicate to resolution of the primary issue of the case, viz., whether state courts had jurisdiction to enforce claims under § 301 of the Labor Management Relations Act, 61 Stat. 158 (1947).

7. Melendy's claim against the employer in the lower court raised the question of whether the

discipline imposed was done with malice. That issue is not relevant to the claim against USPS. There was a valid exercise of disciplinary prerogative, particularly in light of Melendy's acknowledgment that settlement of the grievances was not arbitrary and was arguably supported by the merits.

