Richard James **FREEMAN,**
Plaintiff-Appellee,

v.

**O'NEAL STEEL, INC., etc., et al.,**
**Defendants-Appellants.**

No. 77–2649.

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1980.
Rehearing and Rehearing En Banc
Denied March 3, 1980.

George C. Longshore, Birmingham, Ala., for United Steelworkers.

William F. Gardner, Birmingham, Ala., for O'Neal Steel.

Ralph E. Coleman, Birmingham, Ala., for plaintiff-appellee.

Before COLEMAN, Chief Judge, KRAVITCH and HENDERSON, Circuit Judges.

KRAVITCH, Circuit Judge.

Appellants United Steelworkers of America [union] and O'Neal Steel, Inc. [company] appeal the district court's decision that the union breached its duty of fair representation by arbitrarily, discriminatorily and in bad faith refusing to pursue arbitration of appellee Richard James Freeman's grievance and that the company violated its employment contract by wrongfully discharging Freeman. We find that the district court misapplied the test used to determine whether a union's failure to complete arbitration is a breach of its duty. Accordingly, we reverse.

Freeman, a union member, and a co-worker, Landrum, were both discharged after a fight on company property over possession of a calendar. The union contract with the company contains a three-step grievance procedure and a right of appeal to arbitration. The union filed Freeman's [1] grievance in the second step of the grievance procedure in accordance with the provision permitting the first step to be bypassed in discharge cases. The company denied the grievance in the second and third steps and the union appealed the grievance to arbitration.

Because the union and company could not agree on arbitrators to comprise the arbitration panel, they requested a panel from the Federal Mediation and Conciliation Service. After a list of potential arbitrators was received, the union committee responsible for processing grievances met and decided to withdraw the grievance from arbitration based on the consensus that the grievance could not be won in arbitration. The meeting was attended by the union staff representative Caldwell and all but one of the members of the union committee, but not by plaintiff. The union also consulted with the union's director and the union's attorney.

Freeman then filed suit against the company and the union seeking injunctive relief and damages. Following a bench trial, the trial judge found that the union did breach its duty of fair representation and that the discharge was wrongful.

The issue before us is whether the union's failure to pursue arbitration in this case was a breach of its duty of fair representation.

As exclusive collective bargaining agent for Freeman, the union had a statutory duty to fairly and without hostility or discrimination represent his grievance.[2] *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). However, as we recently indicated in *Cox v. C. H. Masland & Sons, Inc.*, 607 F.2d 138 (5th Cir. 1979), the duty to fairly represent all of the employees in the bargaining unit is not a ministerial one of satisfying each employee's demand at all costs:

> [T]he union is the representative but not the servant of the employees. It not only may, but should, exercise judgment and discretion in its representative capacity. Its duty is violated "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."

*Id.* at 142 (quoting from *Vaca v. Sipes*, 386 U.S. at 190, 87 S.Ct. 903).[3] The key question then, is whether the union in this case abused its discretion and acted in an arbitrary or discriminatory manner or in bad faith when it decided not to proceed with arbitration of the plaintiff's grievance.

The trial court determined that the circumstances surrounding the withdrawal of plaintiff's grievance from arbitration by the union committee supported a finding of bad faith by the union and arbitrary and discriminatory conduct on its part. This con-

---

1. Landrum, appellant's co-worker, did not file a grievance because he said that both parties were guilty in the altercation.

2. As a union member, appellee is precluded from any other representation in the collective bargaining process.

3. *See also Connally v. Transcon Lines*, 583 F.2d 199 (5th Cir. 1978) and *Franklin v. Crosby Typesetting Co.*, 568 F.2d 1098 (5th Cir.), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978).

clusion was based upon the following findings: (1) Plaintiff had an excellent chance of winning the arbitration. (2) It was arbitrary for the union not to proceed at least to the point of selecting an arbitrator. (3) The union, particularly the union representative, displayed a hostile attitude toward plaintiff.

■ It is settled law[4] that a breach of the fair representation duty cannot be based on the trial court's view regarding the probability of success on the merits of a grievance. We expressed this principle in *Turner v. Air Transport Dispatchers' Ass'n,* 468 F.2d 297, 299 (5th Cir. 1972):

> As *Vaca* makes clear, unions should have considerable discretion to control the grievance and arbitration procedure, subject only to a duty of fair representation . . . and an employee is subject to the union's nonarbitrary discretionary power to settle or even abandon a grievance, *even if it can be later demonstrated that the employee's claim was meritorious.*

(emphasis added).

■ If it is within a union's discretion not to file a grievance, it certainly is within its discretion to discontinue the grievance procedure prior to selection of an arbitrator. Thus, "A union's broad discretion in prosecuting grievance complaints includes not only the right to settle the dispute short of arbitration but also to refuse to initiate the first steps in the appeal procedure when it

believes the grievance to be without merit." *Id.* at 300.[5]

The court's finding that the union and its representative, William Caldwell, were hostile to the plaintiff was based upon these factors: (1) Caldwell displayed an openly hostile attitude toward the plaintiff during the trial. (2) Caldwell advised the union committee considering plaintiff's grievance only about similar cases in which a grievant lost in arbitration but not cases won by the grievant. (3) A member of the union committee, erroneously identified by the court as Caldwell, told the plaintiff to stop calling him at night, which, according to the court, exhibited a "don't call us, we'll call you" attitude toward the grievant. (4) The plaintiff was not present at the meeting at which the decision was made not to proceed with his arbitration. (5) The union's decision was motivated by racial bias. (6) The committee represented to the plaintiff that his grievance had been turned down by the arbitrator, when in fact the grievance had been withdrawn.

■ Most of these factors need not detain us. The fact that a member of the committee asked plaintiff not to call him at night about the progress of the grievance was a reasonable request and did not evidence hostility by the union. It certainly did not show hostility on Caldwell's part since it was not Caldwell who was called.

■ There is a dispute in the record as to whether the plaintiff was given notice of

---

**4.** In *Vaca* the Supreme Court held:

> [I]f a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the union's incentive to settle such grievances short of arbitration would be seriously reduced. The dampening effect on the entire grievance procedure of this reduction of the union's freedom to settle claims in good faith would surely be substantial.

386 U.S. at 192–193, 87 S.Ct. at 918.

*See also Moore v. Sunbeam Corp.,* 459 F.2d 811, 820 (7th Cir. 1972), in which then Judge Stevens noted that:

> The Supreme Court in *Vaca* left no doubt that a union owes its members a duty of fair representation, but that opinion also makes it clear that the union may exercise discretion

in deciding whether a grievance warrants arbitration. Even if an employee claim has merit, a union may properly reject it unless its action is arbitrary or taken in bad faith.

**5.** In *Harris v. Chemical Leaman Tank Lines, Inc.,* 437 F.2d 167, 171 (5th Cir. 1971), we stated: "[I]n its role as the exclusive agent for all employees in the bargaining unit, the union has the power to sift out frivolous grievances, *to abandon processing of a grievance which it determines in good faith to be meritless,* and to settle disputes with the employer short of arbitration." (emphasis added)

*See also Melendy v. United States Postal Service,* 589 F.2d 256 (7th Cir.), *cert. denied,* 436 U.S. 927, 98 S.Ct. 2821, 56 L.Ed.2d 770 (1978) and *Buchanan v. NLRB,* 597 F.2d 388 (4th Cir. 1979).

the meeting. However, lack of notice is not determinative on the issue of good faith. It is not essential that the grievant be present when the union decides whether to pursue the grievance. *Whitten v. Anchor Motor Freight*, 521 F.2d 1335 (6th Cir. 1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976).

■ The trial court's finding of fact that the union's decision not to press the grievance was based on racial bias is a conclusory statement unsupported by any evidence. While a refusal to arbitrate, if motivated by racial bias, would constitute a breach of the duty of fair representation, there must be evidence to support such a finding. ⁚

■ The alleged misrepresentation to the plaintiff concerning the status of his grievance is irrelevant since the misrepresentation, if it took place, would have occurred *after* the alleged bad faith action.

We are thus left only with the court's finding that Caldwell was personally hostile to the plaintiff.[6] This finding was based on Caldwell's demeanor during trial and the fact that he advised the committee of similar cases lost by a grievant in arbitration but not cases won by a grievant.

If in fact the union representative was hostile to the plaintiff *and* the decision not to pursue the grievance was influenced by his hostility rather than by appropriate considerations, then the decision that the union breached its duty of fair representation must be upheld. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

■ Here the trial judge did not find, nor could he find on the record, that Caldwell's hostility motivated the union to withdraw the grievance from arbitration.[7] Furthermore, the demeanor of a witness at trial may be considered in evaluating the credibility of that witness, but it cannot by itself uphold a finding of union hostility.

In effect, the court held that since Caldwell was hostile in court, his testimony that the decision not to pursue the grievance was legitimately made after a careful review of the merits of the case must be disbelieved and the opposite conclusion—i. e., that the decision was based on factors other than the merits of the case—is established as fact. This is simply not the law. *Moore v. Chesapeake & Ohio Railway Co.*, 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547 (1951).[8] There must be independent evidence of hostility or unfair treatment of the plaintiff to uphold the trial judge's finding of hostility based on courtroom demeanor.

■ The court found additional evidence of the alleged hostility of Caldwell to the plaintiff in the fact that Caldwell told the committee only about similar cases decided against a grievant in arbitration but not the cases decided in a grievant's favor. However, this is not sufficient to constitute substantial evidence of unfairness. The union representative is not a lawyer and he cannot be expected to function as one. Fur-

---

6. The trial court ignored the fact that when appellee was discharged in 1971 for refusing to work overtime, Caldwell handled his grievance. The arbitrator there held that Freeman was at fault but that discharge was disproportionate to the offense and reduced it to two months' suspension without pay.

7. In *Melendy v. United States Postal Service*, 589 F.2d 256 (7th Cir.), *cert. denied*, 436 U.S. 927, 98 S.Ct. 2821, 56 L.Ed.2d 770 (1978), the plaintiff contended the union representative harbored personal hostility toward him and for that reason had refused to take his grievance to arbitration. The court summarized the evidence relied on by plaintiff:

> Melendy attempted to create an inference that Zych [the union representative] showed "personal hostility (or lack of respect) toward Melendy," by Zych's statements in his deposition that he recalled Melendy used an unflattering term in referring to a judge whom Melendy felt he should sue, that Zych thought Melendy had "a little vindictive attitude," that Zych stated "I can tell you a number of vendettas he (Melendy) told me about," and that Zych testified of being told by the local union president that Melendy was "a real hothead."

> The court held that this evidence was insufficient to show any hostility and that "These statements simply fail to put into controversy Zych's uncontradicted statement that the settlements were based solely on his assessments of the merits." *Id.* at 259, n. 3.

8. *See also Dyer v. MacDougall*, 201 F.2d 265 (2d Cir. 1952) and *United States v. Jenkins*, 510 F.2d 495, 499 (2d Cir. 1975).

thermore, the committee members indicated that prior case law was not the only factor considered; they examined all contents in the file of benefit to the plaintiff.

Viewing the evidence as a whole we cannot agree that there is "substantial evidence" to support the trial court's finding that the union's conduct toward plaintiff was arbitrary, discriminatory, and in bad faith. *Bures v. Houston Symphony Society*, 503 F.2d 842 (5th Cir. 1974).[9]

As heretofore noted, the union must be given some discretion in deciding whether to request that a grievance be taken to arbitration. This discretion is not boundless.[10] Its limits are discussed in *Cox v. Masland*:

> [I]n *Turner v. Air Transport Dispatchers' Assoc.*, 5 Cir. 1972, 468 F.2d 297, we held that a union's discretion is confined by the duty to investigate the grievance and determine its merit. *Id.* at 299. *Accord Steinman v. Spector Freight System, Inc.*, 2 Cir. 1971, 441 F.2d 599; *St. Clair v. Local 515, International Brotherhood of Teamsters*, 6 Cir. 1969, 422 F.2d 128. After doing so, the union is entitled to weigh the costs and benefits of going to arbitration, including the chances of success and the monetary cost. *See Encina v. Tony Lama Boot Co.*, 5 Cir. 1971, 448 F.2d 1264, 1265 (per curiam).

*Id.* at 145.

In the present case it is undisputed that the union investigated Freeman's discharge, that it pressed Freeman's grievance through the second and third steps of the contractual procedure, that in preparation for the third step meeting the union conducted a reenactment of the fight, and that the union decided not to take the case through arbitration only after a special conference to consider all the facts and arguments for and against arbitration. These union actions demonstrate a serious consideration of Freeman's claim.

Both employees involved in the altercation were discharged. Presumably, then, it would have been unlikely for the plaintiff's grievance to succeed absent a showing that he was not the aggressor. Considering the fact the union had notarized statements from eyewitnesses making it appear that the plaintiff was the aggressor, it would have been difficult for the union to prove the contrary. In view of the above we cannot say that the union's assessment that there was little chance of success was unreasonable.

Because we find that the union's failure to pursue arbitration was not a breach of its duty of fair representation, we need not decide whether the discharge was a violation of the employment contract.

REVERSED.

---

9. To meet his burden of showing a reasonable probability of success upon the merits, Bures must prove arbitrary or bad faith conduct (the absence of honest purpose and judgment or the presence of hostility or discrimination) by the union. *Vaca v. Sipes, supra*, 386 U.S. at 193, 87 S.Ct. at 918. His proof of unfair representation must demonstrate "substantial evidence of fraud, deceitful action or dishonest conduct." *Amalgamated Ass'n of Street Employees v. Lockridge*, 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971), reh. denied, 404 U.S. 874, 92 S.Ct. 24, 30 L.Ed.2d 120 (1972). The subjective suspicions aroused by the Players Committee's actions do not rise to this level. 503 F.2d at 844.

10. *See* Wyle, *Labor Arbitration and the Concept of Exclusive Representation*, 7 B.C. Ind. & Com.L.Rev. 783 (1966).