**Damon DUKES**

v.

**BETHLEHEM STEEL CORP., et al.**

**Civ. A. No. N–86–3001.**

United States District Court,
D. Maryland.

May 14, 1987.

Damon Dukes, pro se.

Stephen D. Shawe, J. Michael McGuire, and Shawe & Rosenthal, Baltimore, Md., for defendant Bethlehem Steel Corp.

John H. Price, Baltimore, Md., for defendant United Steelworkers of America, Local 2609.

## MEMORANDUM

NORTHROP, Senior District Judge.

Plaintiff Damon Dukes is an employee of defendant Bethlehem Steel Corporation ("the Company") and a member of defendant union, United Steelworkers of America, Local 2609 ("the Union"). In this suit brought pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), plaintiff, proceeding *pro se*, alleges that the Company violated the collective bargaining agreement entered into with Local 2609 by (1) failing to comply with an arbitral award ordering that plaintiff be made whole for lost earnings occasioned by a wrongful termination, ("the backpay claim") and (2) by delaying payment of disability benefits from January 1986—April 1986 ("the disability claim"). Plaintiff also claims that the Union breached its duty of fair representation by failing to adequately address these alleged violations of the collective bargaining agreement.

Presently before the Court are motions for summary judgment filed by the defendants. Defendants contend that they are entitled to the entry of judgment in their favor because all grievances filed by the plaintiff relating to back pay and disability benefits have been resolved. After careful consideration of the pleadings submitted by the parties and the arguments stated in open court, the Court holds that, for the reasons stated hereafter, the defendants' motions for summary judgment will be granted as to the backpay claim and denied as to plaintiff's disability claim. The disability claim will, however, be dismissed without prejudice.

The undisputed facts for purposes of these motions are as follows. Plaintiff, a crane operator employed by Bethlehem Steel was terminated by the Company for various reasons on July 9, 1984. Following his discharge, plaintiff immediately filed suit in this Court against the Company and the Union, but was directed to first exhaust contractual grievance procedures before proceeding in this forum. On behalf of plaintiff, the union then proceeded to grieve his claim. An arbitration decision was subsequently rendered in plaintiff's favor on December 31, 1985. Finding that Bethlehem Steel did not have just cause for terminating plaintiff, the arbitrator ordered that he be reinstated and made whole. Due to the successful resolution of plaintiff's claim, this Court granted summary judgment for the defendants in the July 1984 suit.

Pursuant to the arbitrator's decision, plaintiff returned to work at Bethlehem Steel on January 15, 1986. After working a full day on January 15th and half a day on January 16th, plaintiff left work claiming that his fear of being harmed in retaliation for having filed a grievance against the Company prevented him from working. On January 23, 1986, plaintiff filed a claim for disability benefits available under Bethlehem Steel's "Program of Insurance Benefits" ("PIB").

Under the PIB an employee became eligible to receive weekly sickness and accident benefits if "totally disabled as a result of sickness or accident so as to be prevented from performing the duties of ... employment and a licensed physician certifies thereto." Such payments could continue for an initial period of thirty-four weeks. In the event that a dispute arose between the union and the company regarding the benefits payable to an employee under the PIB, Article XXI of the Collective Bargaining Agreement specified procedures to be used to resolve the conflict.

Having received no response to his January 1986 claim, plaintiff filed a second disability benefit request on February 5. As required by the PIB, in early March, plaintiff submitted a letter in support of his claim from a psychologist who had treated him. The Company denied plaintiff's request for disability benefits on March 13, 1986, citing his failure to produce substan-

tiation from a "licensed physician" as the cause of the rejection. In early April, plaintiff submitted a letter from a licensed physician, Dr. Alan Peck, to verify his condition. The Company then began making weekly disability benefit payments to the plaintiff on April 18, 1986.

In the meanwhile, a dispute had arisen between plaintiff and the Union on one side, and the Company on the other, regarding the meaning of the arbitration award which ordered the company to make plaintiff whole for earnings lost as a result of his wrongful termination. This controversy centered on whether the company was required to compensate plaintiff for the time between his discharge in July 1984 and re-instatement in January, 1986. Though generally acknowledging their responsibility to provide plaintiff with back pay, the company contended that it was not required to make such payments for the following two periods: 1) September 16, 1984 through June 22, 1985, during which time plaintiff was incarcerated for a crime committed prior to his discharge; and 2) June 23, 1985 through September 21, 1985, the period prior to his arbitration hearing on September 17, 1985. Plaintiff disagreed with the company's interpretation of the award, arguing that he was entitled to backpay totalling approximately $18,000.00 for both these periods. Accordingly, on January 20, 1986, the Union filed a grievance under the collective bargaining agreement alleging that the Company was not in compliance with the arbitration award.

The collective bargaining agreement governing relations between the Company and the union designated the union as the "exclusive representative of all employees for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment." Article XI of the agreement outlined the procedural steps to be followed in the conduct of grievance proceedings.

The grievance process described in the collective bargaining agreement consisted of four distinct stages, within each of which designated union representatives and company spokespersons were authorized to settle, withdraw or appeal a grievance. The agreement also established various timetables for the different stages. Section 11.02.27 of Article XI provided:

> Except as otherwise agreed by the company and the union, meetings which shall be required under this Step No. 4 shall. be held ... within 60 calendar days after receipt of the appeal to Step No. 4 ... and the number of such meetings and any other procedure which may aid in the effort to reach a satisfactory settlement of any grievance shall be agreed upon between the certified representatives of the company and the certified representatives of the union.

If a case remained unresolved after proceeding through the four steps, it could be appealed to arbitration for a final decision. In addition, the agreement contained guidelines for a special expedited arbitration proceeding. Typically, expedited arbitration was used if a situation posed the threat of a potential strike or imminent safety concern.

In this case, as permitted by the agreement, plaintiff's backpay grievance bypassed the first two steps of the process and was appealed immediately into step three on January 21, 1986. On February 10, plaintiff sent a letter to the Company and the Union requesting immediate arbitration of his grievance. No change was made, however, and step three representatives discussed plaintiff's grievance without disposition on February 13, 1986. Two weeks later, plaintiff's grievance was denied in step three. On April 30, the Union appealed this decision to step four.

In the ensuing months, no action was taken on plaintiff's grievance. While he was awaiting a decision on the backpay matter, plaintiff's disability payments were suddenly stopped in August, 1986, despite the fact that he had not yet received 34 weekly payments. On behalf of plaintiff, the Union filed a grievance on September 25, 1986, seeking reinstatement of the disability benefits. Shortly thereafter, on September 29, 1986, plaintiff instituted the suit presently before this Court seeking damages from the company and the union

for their failure to resolve his backpay grievance and for the untimely termination of his disability benefits. In early October, plaintiff's disability grievance was resolved in his favor. The Company retroactively paid the improperly terminated benefits and resumed the weekly disability payments until plaintiff had received all benefits to which he was entitled.

In contrast, the backpay grievance was stalled in step four until November 5, 1986, at which time it was denied. On December 11, 1986, the Union appealed this adverse determination to arbitration. During the week preceding the scheduled arbitration of plaintiff's claim, representatives of the Company and the Union discussed possible settlement of the grievance. Based upon these negotiations, the Union agreed to accept $5,500.00 in full settlement of the grievance. Accordingly, William Rommel, a staff representative of the Union, executed an agreement to that effect on March 26, 1987.

Based upon the foregoing facts, defendants assert that they are entitled to summary judgment on plaintiff's claims relating to both the back pay and disability benefit grievances.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant a motion for summary judgment where: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The party opposing summary judgment must then produce specific facts showing the existence of a genuine issue for trial. *Id.* A genuine issue is present only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, the evidence and all justifiable inferences deducible therefrom must be viewed in the light most favorable to the non-moving party. *Id.* 106 S.Ct. at 2513, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

■ Though the Court will consider the merits of the summary judgment motions as they relate to each of plaintiff's two claims, several generally recognized principals of law are applicable to both. It is well settled that under section 301 of the Labor Management Relations Act, a plaintiff must first attempt to exhaust contractual grievance procedures contained in a collective bargaining agreement before pursuing a remedy in federal court. A decision rendered pursuant to such procedures may be challenged only if the Union is shown to have breached its duty of fair representation. *Republic Steel v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

While unions have been accorded wide discretion in the handling of a member's grievance, they also have been found to owe a duty to fairly represent an employee such that they may not act arbitrarily, discriminatorily or in bad faith in processing a grievance. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967), *Hines v. Anchor Motor Freight,* 424 U.S. 554, 563, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976).

The contours of this duty were described by the Fourth Circuit in *Wyatt v. Interstate & Ocean Transport Co.,* 623 F.2d 888, 890 (4th Cir.1980):

[A] union's duty to fairly represent is to "serve the interests of all members without hostility, discrimination, arbitrariness or capriciousness toward any. Although a union may exercise discretion in representing employees, it must act with complete good faith and honesty." *Harrison v. United Transportation Union,* 530 F.2d 558, 561 (4th Cir.1975), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976). A breach of a union's statutory duty of fair representa-

tion occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

■ Thus, a union does not breach this duty of good faith merely by refusing to submit a claim to arbitration or by settling a grievance short of arbitration as long as such actions are not arbitrary, discriminatory or in bad faith. *Vaca v. Sipes*, 87 S.Ct. 917–18. Indeed, In *Vaca v. Sipes*, the Supreme Court highlighted the desirability of according unions flexibility in deciding how to handle grievances:

> In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures. Moreover, both sides are assured that similar complaints will be treated consistently, and major problem areas in the interpretation of the collective bargaining contract can be isolated and perhaps resolved. And finally, the settlement process furthers the interest of the union as statutory agent and as coauthor of the bargaining agreement in representing the employees in the enforcement of that agreement.

Whether a union has exercised acceptable discretion or breached its duty of fair representation generally depends on the facts of each case. *Griffin v. International Union, United Automobile*, 469 F.2d 181, 182 (4th Cir.1972).

With these general principles in mind, the Court will first consider whether summary judgment should be granted as to plaintiff's backpay claim. In this suit, plaintiff contends that the union violated its duty to fairly represent him by: 1) allowing his claim to languish for eight months in step four of the grievance process in violation of the time limits set out in the collective bargaining agreement while other claims were not similarly delayed; 2) settling the claim in his absence; and 3) settling the claim for an unacceptable amount. In their motions for summary judgment, defendants contend that as a matter of law, the union exercised acceptable discretion in handling plaintiff's grievance and did not act arbitrarily, discriminatorily or in bad faith. The Court must consider the merits of defendant's contention with respect to each of plaintiff's allegations.

■ As mentioned previously, plaintiff first alleges that the union breached its duty by intentionally delaying the processing of his grievance in violation of the time limits established in Article XI § 11.02.27 of the bargaining agreement. Defendants argue that the delay in step four did not violate the terms of the bargaining agreement because Article XI § 11.02.27 itself gives the company and the union the power to alter the 60 day limit in appropriate circumstances. Section 11.02.27 provides that the 60 day limit governs only "[e]xcept as otherwise agreed by the company and the union". In an affidavit, William Croll, Supervisor of Employee Relations for Bethlehem Steel, stated that during the pendency of the grievance the company and the union agreed to ignore the 60 day time limit, because of their involvement in collective bargaining negotiations between February 1986 and June 1986.

The Court finds that the collective bargaining agreement clearly granted the union and the company the power to forego the 60 day deadline. Contrary to plaintiff's assertions, the decision to postpone consideration of grievances during the bargaining negotiations did not violate the agreement.

Plaintiff asserts, however, that even if a delay in processing a grievance is technically permissable, the union violated its duty of fair representation by postponing consideration of his particular grievance while acting upon other similar grievances. Defendants dispute plaintiff's contention, asserting that little grievance activity occurred during the period of collective bargaining negotiations because company la-

bor relations personnel and union officials were largely unavailable. In his affidavit, Croll states that plaintiff's claim was processed in a manner consistent with other then pending grievances.

Plaintiff contests defendants' version of the impact of the bargaining negotiations on the processing of his grievance. According to plaintiff, a material dispute of fact exists as to whether plaintiff's grievance was singled out for unique treatment. William Lohman, Chairman of the union's grievance committee, stated in an affidavit that the union and the company interrupted the collective bargaining negotiations in April 1986 in order to deal with "a tremendous backlog" of grievances "ranging from 1 to 4 years old." Lohman explained that the negotiators had agreed to clear this backlog before reconvening their discussions. Despite the fact that plaintiff's grievance was part of the backlog, Lohman noted that the union and company failed to discuss it until it was settled in April 1987.

■ Based upon the Lohman affidavit, plaintiff contends that summary judgment may not be granted because he has met his burden of producing specific facts showing the existence of a genuine issue for trial. A fact is material, however, only if "the evidence is such that a reasonably jury could return a verdict for the non-moving party." *Anderson*, 106 S.Ct. at 2505. Were there conflicting evidence to support the proposition that plaintiff's grievance was treated differently from all other grievances, this might arguably justify a jury finding that the union acted in bad faith. Peculiar treatment of plaintiff's grievance, however, is not justifiably inferable from the Lohman affidavit, the only evidence adduced by plaintiff to oppose summary judgment. While Lohman avers that the union did not process plaintiff's grievance during the postponement, he does not indicate whether all other pending grievances were settled or whether other grievances were similarly neglected.

Viewing all disputed facts, in the light most favorable to the plaintiff, the most that might reasonably be inferred from plaintiff's evidence is that the union was negligent in its handling of plaintiff's claim. It is well settled in this Circuit, however, that mere negligence does not constitute a violation of a union's duty of fair representation toward its member. *Griffin*, 469 F.2d at 183. Plaintiff has failed to meet his burden of resisting summary judgment as to this prong of his backpay claim.

Plaintiff next claims that the union breached its duty by settling his backpay grievance while he was not present. Defendants admit that the claim was settled in plaintiff's absence, but point out that the bargaining agreement itself and relevant case law clearly give union representatives the authority to settle such claims.

■ Circuits which have considered the issue have generally held that the duty of fair representation does not require a union to refrain from acting on a grievance due to a member's absence. *Freeman v. O'Neal Steel, Inc.*, 609 F.2d 1123, 1127 (5th Cir.1980) (not essential that grievant be present when union decides whether to pursue grievance); *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975) (same); *Higdon v. United Steelworkers of America*, 706 F.2d 1561, 1562 (11th Cir.1983) (union does not breach duty of fair representation simply by failing to give member notice and opportunity to attend particular segment of grievance proceeding); *see also* recent Fourth Circuit unpublished decision, *Howell v. Miller Brewing Co.*, No. 86–3568, slip op. at 4 (4th Cir. April 13, 1987) [816 F.2d 672 (table) ] (citing *Higdon supra* for same proposition). Unless it can be shown that a union's failure to afford plaintiff an opportunity to be present at a grievance proceeding amounted to an arbitrary or bad faith handling of that claim, the duty of fair representation has not been breached. *See Singer v. Flying Tiger Line, Inc.*, 652 F.2d 1349, 1354 (9th Cir.1981).

■ In the case at bar, plaintiff advanced only one reason why the union acted in bad faith by proceeding in his absence. According to plaintiff, had he been present at the proceeding, he could have introduced evidence demonstrating that se-

vere pressure at work had caused him to commit the violent crime for which he was imprisoned. Thus, plaintiff contends defendant Bethlehem Steel was responsible for the crime and therefore obligated to furnish him with backpay for the time spent in prison. The Court finds, however, that plaintiff has produced no evidence to show that the union's decision to abandon this particular theory in settling plaintiff's grievance was undertaken arbitrarily or in bad faith. Summary judgment is therefore appropriate as this prong of plaintiff's backpay claim.

█ Finally, in relation to the back pay claim, the Court must consider plaintiff's contention that the union breached its duty of fair representation by accepting an unreasonably low settlement figure. Defendants have submitted affidavits from two union representative attesting to the fairness of the settlement figure. Aside from bald statements disputing the reasonableness of the settlement, plaintiff has produced no evidence to rebut the reasonableness of the settlement amount. Therefore, the Court concludes that summary judgment may appropriately be granted as to all of plaintiff's allegations of unfair representation relating to his backpay claim.

Next, the Court turns to plaintiff's allegations concerning his disability benefit grievance. Plaintiff claims that the Company violated the collective bargaining agreement by failing to initiate disability payments in a timely fashion. Specifically, plaintiff seeks compensation for the harm he allegedly suffered as a result of the Company's refusal to pay him disability benefits until April 1986.

Whether plaintiff has a right to recover damages for any delay occasioned by the Company's processing of his disability claim is governed by the terms of the collective bargaining agreement. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). Plaintiff contends that the psychologist whose opinion was first submitted in support of his·disability claim qualified as a licensed physician within the meaning of the insurance agreement and that in refusing to accept him as such the company violated the agreement. The Company on

the other hand, contends that plaintiff's psychologist was not a licensed physician within the meaning of the company's Program of Insurance Benefits. Resolution of plaintiff's claim on this issue necessarily involves an interpretation of the collective bargaining agreement and related insurance agreement.

█ Prior to commencing an action against an employer for breach of contract, under section 301 of the Labor Management Relations Act, an employee is required to attempt to exhaust contractual remedies. *Republic Steel Corp.,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). In the case at bar, there is no evidence suggesting that plaintiff has even attempted to bring a grievance seeking damages for the delay in disability benefits during the period January through April 1986. While plaintiff did ask the Union to grieve the sudden discontinuance of his benefits in late August, he obtained complete relief on that issue when the Company reinstated his benefits and paid him retroactively for the interruption. During the hearing before this Court, plaintiff himself admitted that he had not asked the Union to seek damages on his behalf for the earlier delay in benefits. Plaintiff has alleged no facts in support of excusing the exhaustion requirement in this case.

Faced with the inescapable conclusion that plaintiff has failed to avail himself of the contractual grievance procedures to resolve his claim against the Company, the Court finds that this action was prematurely instituted as to the disability claim. In such a situation, the Court deems dismissal of plaintiff's claim, rather than summary judgment, to be the appropriate action. Thus, plaintiff's claim for damages resulting from the Company's alleged wrongful denial of disability benefits for the period of January through April 1986 will be dismissed without prejudice.

A separate Order will be entered confirming the rulings herein.