# STATE OF MICHIGAN

# COURT OF APPEALS

---

AFSCME COUNCIL 25 LOCAL 2394,

　　　　　Respondent-Appellee,

v

NEIL SWEAT,

　　　　　Charging Party-Appellant.

UNPUBLISHED
February 2, 2016

No.　323933
Michigan Employment Relations
Commission
LC No.　10-000070

---

Before:　SHAPIRO, P.J., and O'CONNELL and BORRELLO, JJ.

PER CURIAM.

　　　　Charging party appeals as of right an order from the Michigan Employment Relations Commission ("MERC") granting summary disposition in favor of respondent, AFSCME Council Local 2394.　For the reasons set forth in this opinion, we affirm.

　　　　This action, which has a somewhat lengthy history, arises out of charging party's dissatisfaction with respondent's efforts to address two disciplinary actions the Detroit Housing Commission ("DHC"), charging party's employer, brought against him, the second of which resulted in termination of his employment.　Charging party asserted that respondent breached the duty of fair representation because 1) staff representatives Jimmie Hearns and Cathy Phillips failed to respond to or pursue his requests for arbitration in conjunction with the grievance for his 2008 suspension, 2) Local 2394 President Yolanda King failed to submit to DHC his request for additional documentation associated with his 2009 termination, and 3) King submitted the 2009 grievance to DHC in an untimely fashion, leading to DHC's rejection of the grievance.

　　　　The Administrative Law Judge (ALJ), having provided the parties with numerous opportunities to set forth their respective positions, found that charging party failed to provide any evidence from which the ALJ could conclude that respondent violated its duty of fair representation under PERA.　Specifically, the ALJ found that respondent failed to produce any fact or facts from which the ALJ could conclude that charging party had evidence of respondent's innocence to the charges brought against him by his employer, thereby rendering respondent's decision not to arbitrate "irrational."　Having found no such facts, the ALJ concluded that respondent did not breach its duty of fair representation.

　　　　Charging party then appealed to the MERC which similarly concluded the lack of factual support for finding that charging party breached its duty of fair representation.　Specifically, the

-1-

MERC found that ". . . [C]harging Party failed to demonstrate that Respondent's decision not to advance the grievance to arbitration was arbitrary, irrational, made in bad faith, dishonest or unreasonable."[1]  This appeal then ensued.

## I. SUMMARY DISPOSITION

On appeal, charging party asserts that summary disposition was improper because he presented ample evidence of breaches of the duty of fair representation on the part of Hearns, Phillips, and King.

We review de novo the MERC's legal rulings, and may not overturn such rulings "unless they violate the constitution, a statute, or are grounded in a substantial and material error of law." *St Clair Co Intermediate Sch Dist v St Clair Co Ed Ass'n*, 245 Mich App 498, 513; 630 NW2d 909 (2001).  Further, we review de novo a decision on a motion for summary disposition. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). The ALJ's decision and recommended order seemed to conflate the standards for summary disposition under MCR 2.116(C)(8) and (10), providing that charging party had "failed to state a valid claim against [respondent] under PERA[,]" that "there were no legitimate issues of material fact[,]" and that charging party had "failed to set forth any facts which, if proven, would establish [respondent] violated PERA."  It is clear, however, that the ALJ considered a wide range of documentation and testimony from the hearings in reaching his decision.  Accordingly, review under the standards of MCR 2.116(C)(10) is appropriate in this case.  See *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19, 23; 800 NW2d 93 (2010).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint.  *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).  In deciding a motion under MCR 2.116(C)(10), we "review[] the entire record, including affidavits, depositions, admissions, or other documentary evidence" in a light most favorable to the nonmoving party.  *Gorman*, 302 Mich App at 115.  To avoid dismissal on a motion for summary disposition under MCR 2.116(C)(10), the nonmoving party must "show[] by evidentiary materials that a genuine issue of disputed fact exists."  *Auto Club Ins Ass'n v State Auto Mut Ins Co*, 258 Mich App 328, 333; 671 NW2d 132 (2003).  See also MCR 2.116(G)(4) (providing the nonmoving party's burden of proof with regard to a motion for summary disposition under MCR 2.116(C)(10)).  Conversely, "[t]he motion is properly granted if the evidence shows that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013).

The law regarding a union's duty of fair representation (DFR) is well-settled. The duty is intended to ensure fair treatment to all employees in a bargaining unit who are represented by an exclusive bargaining agent. It seeks to ensure that unions and employers are sensitive to individual rights and interests of those not in the majority.  Generally, the legal issue in a DFR

---

[1] Both the ALJ and the MERC concluded that charging party's claims were also barred by the six month statute of limitations.  MCL 423.216(a).

suit is whether the union's acts or omissions are "arbitrary, discriminatory or in bad faith." *Humphrey v Moore*, 375 US 335, 342; 84 S Ct 363; 11 L Ed2d 370 (1964).

The seminal case regarding a union's duty of fair representation is *Vaca v Sipes*, 386 U.S. 171, 177; 87 S Ct 903; 17 L Ed2d 842 (1967), wherein the Supreme Court held that union conduct that is "arbitrary, discriminatory or in bad faith" violates the DFR. A union has the "statutory duty to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* Later decisions of the Supreme Court held that under the "arbitrary" prong, a union's actions breach the duty of fair representation "only if [the union's conduct] can be fairly characterized as so far outside a 'wide range of reasonableness' that it is wholly 'irrational' or 'arbitrary.'" *Air Line Pilots v O'Neill*, 499 US 65, 78; 111 S Ct 1127; 113 L Ed2d 51 (1991) quoting *Ford Motor Co v Huffman*, 345 US 330, 338; 73 S Ct 681; 97 L Ed 1048 (1953). This "wide range of reasonableness" gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong. In *Air Line Pilots*, for example, the union had negotiated a settlement agreement with the employer, which in retrospect proved to be a bad deal for the employees. The fact that the union had not negotiated the best agreement for its workers, however, was insufficient to support a holding that the union's conduct was arbitrary. *Air Line Pilots*, 499 US at 78-81. A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation. *Marquez v Screen Actors Guild*, 525 US 33, 45-46; 119 S Ct 292; 142 L Ed2d 242 (1998).

As is the case with most issues arising under PERA, our Courts have generally been guided by decisions of federal courts relative to statutory labor law claims. In *Goolsby v Detroit*, 419 Mich 651, 660 n5; 358 NW2d 856 (1984), our Supreme Court acknowledged same, holding:

> Thus, this Court has stated that in construing our state labor statutes we look for guidance to "the construction placed on the analogous provisions of the NLRA by the [National Labor Relations Board] and the Federal courts". *Rockwell v Crestwood School Dist Bd of Ed*, 393 Mich 616, 636; 227 NW2d 736 (1975), reh den 394 Mich 944 (1975), app dis sub nom *Crestwood Ed Ass'n v Bd of Ed of School Dist of Crestwood*, 427 U.S. 901; 96 S Ct 3184; 49 L Ed 2d 1195 (1976). Also *Michigan Employment Relations Comm v Reeths-Puffer School Dist*, 391 Mich 253, 259-260; 215 NW2d 672 (1974); *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 53; 214 NW2d 803 (1974). Consequently, since the rights and responsibilities imposed on labor organizations representing public sector employees by PERA, see MCL 423.207(1); MSA 17.455(7)(1), MCL 423.209; MSA 17.455(9), MCL 423.211; MSA 17.455(11), MCL 423.215; MSA 17.455(15), are similar to those imposed on labor organizations representing private sector employees by the NLRA, it must be concluded that PERA impliedly imposes on labor organizations representing public sector employees a duty of fair representation which is similar to the duty imposed by the NLRA on labor organizations representing private sector employees. See *Demings v City of Ecorse*, 127 Mich App 608, 615-617; 339 NW2d 498 (1983).

Consequently, our state's jurisprudence relative to this issue, is guided in large part by federal precedents. Thus, in order to prevail, charging party must meet the threshold set forth in *Vaca* and its progeny. Additionally, our Supreme Court held in *Goolsby* that the union must act "without fraud, bad faith, hostility, discrimination, arbitrariness, caprice, gross nonfeasance, collusion, bias, prejudice, willful wanton, wrongful and malicious refusal, personal spite, ill will, bad feelings, improper motives, misconduct, overreaching, unreasonable action, or gross abuse of its discretion in processing or refusing or failing to process a member's grievance." *Goolsby*, 419 Mich at 663-664 (citation and quotation marks omitted). Intentional acts or omissions made for dishonest or fraudulent reasons demonstrate bad faith. *Id*. at 679.

A breach of duty does not necessarily require arbitrary or bad-faith conduct, however. *Goolsby*, 419 Mich at 681-682. "[T]he conduct prohibited by the duty of fair representation includes (a) impulsive, irrational or unreasoned conduct, (b) inept conduct undertaken with little care or with indifference to the interests of those affected, (c) the failure to exercise discretion, and (d) extreme recklessness or gross negligence." *Id.* at 682. "Absent a reasoned, good-faith, nondiscriminatory decision not to process a grievance," a union's failure to comply with collectively bargained grievance procedures constitutes a breach of duty. *Id.*

First stated in federal case law and adopted by our Courts, regardless of the union's duty, an employee does not possess "an absolute right to have his grievance taken to arbitration, because, for the grievance machinery to work properly, the union must be given considerable discretion to determine which grievances to press and which to abandon." *Demings v City of Ecorse*, 423 Mich 49, 70; 377 NW2d 275 (1985). This Court has held that part of that "considerable discretion" entails the union's right to "assess each grievance with a view to individual merit." *Knoke v East Jackson Pub Sch Dist*, 201 Mich App 480, 486; 506 NW2d 878 (1993). Finally—and significantly—"[t]o prevail on a claim of unfair representation, the employee must establish not only a breach of the duty of fair representation but also a breach of the collective bargaining agreement." *Martin v East Lansing Sch Dist*, 193 Mich App 166, 180-181; 483 NW2d 656 (1992).

Our review of the record evidence in this case leads us to conclude that the MERC was correct in its finding that the charging party failed to raise a genuine issue of material fact regarding whether DHC breached the collective bargaining agreement. Throughout the proceedings, charging party asserted that his suspension and termination were improper, that he was innocent, and that a fair grievance process would vindicate him. Despite those contentions, he admitted to King that he left rental checks in his desk drawer in 2008, and his representative admitted during the hearings that he could not disprove DHC's charge that charging party left checks in his desk drawer again in 2009. As the ALJ correctly noted, this meant that DHC was entitled to suspend charging party in 2008 and to terminate him in 2009.

Charging party places great stock in his contentions that he should have received a shorter suspension in 2008 and that he should have received progressive discipline by being suspended, rather than fired, in 2009. But the DHC's disciplinary guidelines provide that "imposition of discipline *in most cases* will be progressive in nature[,]" that "each case will be considered on its individual merits," and that the "seriousness of the infraction may warrant severe action without the benefit of prior warnings or discipline." Thus, rather than presenting some ironclad rule, contravention of which would constitute a collective-bargaining violation,

the evidence showed only that DHC had a general set of disciplinary guidelines from which they could depart depending on the situation, and that respondent acceded to their discretion in so doing. And without demonstrating a breach by DHC, charging party cannot prevail on his claim. *Martin*, 193 Mich App at 180-181.

The failure to establish a breach of the collective bargaining agreement by DHC is fatal to charging party's claim, but he also failed to raise a genuine issue of material fact regarding whether respondent breached the duty of fair representation. Regarding the 2008 grievance, charging party asserts that Hearns and Phillips failed to pursue or respond to his requests for arbitration, and respondent essentially conceded the fact when its own internal appeals panel awarded charging party 15 days' pay because the pair "failed to take appropriate action."

That failure, however, does not necessarily equate to a breach of the duty of fair representation. To the extent that Hearns's and Phillips's failings in this regard could be understood as a failure to process the grievance, charging party presented no evidence to demonstrate that the failure was motivated by fraud, bad faith, hostility, discrimination, or any of the other states of mind enumerated in *Goolsby*. *Goolsby*, 419 Mich at 663-664. He also failed to show bad faith by presenting evidence that Hearns or Phillips committed intentional acts or omissions for dishonest or fraudulent reasons. *Id*. at 679. And Hearns and Phillips received charging party's requests for arbitration in November 2008 and January 2010, respectively, well after King and numerous union panels had already determined that the grievance lacked merit. Thus, a "reasoned, good-faith, nondiscriminatory decision" for refusing to pursue the grievance existed, and failure to proceed to arbitration did not constitute a breach. *Goolsby*, 419 Mich at 682. The failure to respond to the requests in any way at all may have seemed arbitrary to charging party, but it was not outside a wide range of reasonable behavior given the grievance's lack of merit. *Air Line Pilots*, 499 US at 67. Simply put, there was no evidence, even when viewed in a light most favorable to charging party, to demonstrate that respondent was hostile, discriminatory, arbitrary, or acted in bad faith in conjunction with the 2008 grievance. *Vaca*, 386 US at 177; *Goolsby*, 419 Mich at 679.

Regarding the 2009 grievance, charging party initially complained that King breached the duty of fair representation by failing to submit a request for documentation from DHC. King, however, testified that she submitted four such requests at charging party's behest, respondent submitted additional requests, DHC sent information (albeit in sometimes incomplete fashion), and she finally refused charging party's last request after the union had already closed the case. Charging party presents no evidence that King refused the last request for any improper reason— and given that the union had already closed the case, King could have reasonably assumed that submitting yet another request was pointless and unreasonable. Charging party presented no evidence to demonstrate that King's decision was hostile, discriminatory, arbitrary, or done in anything other than good faith and honesty. *Vaca*, 386 US at 177. Further, she was merely exercising the discretion of a union to "determine which grievances to press and which to abandon." *Demings*, 423 Mich at 70.

As to charging party's contentions arising from his 2009 termination, again the record supports the MERC's findings that charging party failed to present any evidence that would raise a question of material fact as to whether respondent breached its duty of fair representation. Testimony revealed that respondent submitted a grievance which was denied by the employer as

untimely. Respondent contends that the failure of respondent to file a timely grievance is sufficient to create a question of material fact as to whether respondent breached its duty of fair representation. However, the Supreme Court, in *United Steel Workers v Rawson*, 495 US 362, 372-373; 110 S Ct 1904; 109 L Ed2d 362 (1990) stated: "The courts have in general assumed that mere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation, and we endorse that view today." Accordingly, mere negligent conduct on the part of the union does not violate the union's DFR. Even if we were to presume respondent negligent in its filing of charging party's grievance, uncontroverted testimony revealed that the decision not to pursue the grievance came not from its untimely filing, but rather from respondent's arbitration review panel which found that the grievance lacked merit. This finding was amply supported by the record which revealed that charging party was unable to introduce any evidence that he was innocent of the charges brought against him by his employer. It was uncontested that charging party was solely responsible for the timely processing of rent checks. It was uncontested that charging party's failure to timely process the rent checks resulted in delays in posting rent checks to residents' accounts which in turn lead to the assessment of $750 in late fees for which the employer was ultimately responsible. However, it is important to note that it was *not* uncontested that the grievance was filed untimely, though what charging party seemingly did not understand through the various proceeding to which he was a party was the issue of timeliness was moot. Respondent made the decision not to proceed with the grievance because respondent concluded charging party could not prevail at arbitration. That decision was made after charging party was afforded numerous opportunities to state his reasons for proceeding with the grievance to respondent's internal arbitration review board. Respondent provided charging party ample opportunity to demonstrate that he was innocent of the charges brought against him by the employer, but the record reveals that charging party was unable to put forth such evidence. Thus, absent *any* facts tending to show charging party's innocence of the violations set forth by the employer, respondent exercised its discretion and decided not to progress with the grievance to arbitration. Again, this decision was made without any evidence of arbitrary, discriminatory or bad faith on the part of respondent. *Vaca*, 386 US at 177. *Goolsby*, 419 Mich at 682.

Charging party also asserts that once respondent began the grievance process, it was duty bound to follow it through to its conclusion. This assertion is legally inaccurate. Numerous federal cases have held that a union need not arbitrate a case in which the chances of winning are slight. See, *Williams v Sea-Land Corp.*, 844 F2d 17 (1st Cir 1988), and, generally, courts will not second guess a union's considered judgment that a grievance will not succeed at arbitration. *Wilder v GL Bus Lines*, 258 F3d 126, (2d Cir 2001); see also *Jones v UPS*, 461F3d 982 (8th Cir 2006); *Freeman v O'Neal Steel Co.*, 609 F.2d 1123 (5th Cir.1980); *King v Space Couriers, Inc.*, 608 F2d 283 (8th Cir 1979). In this case, there was no evidence offered by charging party which would have lead the ALJ or the MERC to conclude that respondent's decision to drop the grievance short of arbitration was the result of arbitrary, discriminatory or bad faith on the part of respondent. *Vaca*, 386 US at 177. *Goolsby*, 419 Mich at 682.

Having concluded that charging party cannot prevail on the merits of his claim, we need not address whether his claims were brought outside the applicable statute of limitations. See, MCL 423.216(a). Accordingly we affirm the judgment of the MERC.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell
/s/ Stephen L. Borrello